UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA,**

v.  Criminal No. 2:17cr126

**RAEANN GIBSON,**

    Defendant.

<u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendant Raeann Gibson's ("Defendant" or "Gibson") motion in limine. Mot. in Limine, ECF No. 93. Defendant requests that the Court exclude (1) evidence of the alleged victims' ages, (2) evidence of the financial circumstances of the alleged victims, and (3) evidence of whether the funds that were invested exhausted all the resources of the alleged victims. <u>Id.</u> For the reasons noted below, Defendant's motion in limine is **DENIED** in part and **GRANTED** in part.

I. Factual and Procedural Background

Gibson is charged, along with two codefendants, with one count of conspiracy to commit mail and wire fraud, five counts of mail fraud, six counts of wire fraud, one count of conspiracy to sell unregistered securities and to commit securities fraud, five counts of sale of unregistered securities, four counts of securities fraud, one count of conspiracy to launder monetary instruments, and five counts of unlawful monetary transactions.

1

Second Superseding Indictment, ECF No. 105. These charges arise from allegations that Defendant and others working with her executed a scheme to defraud investors—most of whom were unsophisticated and at or near retirement age—of millions of dollars. Id. at 28, 30. According to the indictment, the scheme resulted in at least 375 investors suffering losses that exceeded $25 million. Id. at 30. Trial is scheduled to begin in this matter on January 15, 2019.

Defendant filed the instant motion in limine on May 14, 2018. Mot. in Limine, ECF No. 93. Defendant contends that various types of expected evidence must be excluded because they are irrelevant or unfairly prejudicial. Id. Specifically, Defendant requests that the Court exclude evidence regarding (1) the alleged victims' ages, (2) the financial circumstances of the alleged victims, and (3) whether the funds that were invested exhausted all the resources of the alleged victims. Id.

The Government responded on May 29, 2018. Resp. in Opp'n, ECF No. 107. The Government claims that Defendant's motion attempts to relitigate issues about victim vulnerability and financial circumstances that the Court decided at a hearing on March 22, 2018 for codefendant Daryl G. Bank's ("Bank") first motion in limine. Id. at 1. The Government incorporates by reference the argument made in its response to Bank's first motion in limine that granting the motion would exclude highly relevant

2

evidence that is not unfairly prejudicial regarding Defendant's fraudulent intent and the materiality of fraudulent statements. Id. at 6; see Resp. in Opp'n to Bank's Mot. in Limine, ECF No. 47. In its response to Bank's first motion in limine, the Government also argued that it has no intention of offering evidence or testimony regarding "collateral consequences" or other "victim impact evidence." Resp. in Opp'n to Bank's Mot. in Limine, ECF No. 47 at 1, 4-5.

The parties have stipulated to the facts and arguments presented at the hearing for Bank's first motion in limine on March 22, 2018. The parties agree that another hearing is not necessary. Having been fully briefed, this matter is now ripe for disposition.

## II. Legal Standard

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n. 4 (1984). The purpose of a motion in limine is to permit the trial court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (quoting Banque Hypothecaire Du Canton De Geneve v. Union Mines, 652 F. Supp. 1400, 1401 (D. Md. 1987)). Such motions serve important gatekeeping

functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury. See Jonasson v. Lutheran Child and Family Servs., 115 F.3d 436, 440 (7th Cir. 1997).

A court's ruling regarding a motion in limine is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." Luce, 469 U.S. at 41. A court may also reserve judgment on a motion in limine "until trial so that the motion is placed in the appropriate factual context." Cougill v. Prospect Mortg., LLC, No. 1:13cv1433 (JCC/TRJ), 2014 U.S. Dist. LEXIS 12362, at *4 (E.D. Va. Jan. 31, 2014).

A court should only grant a motion in limine to exclude evidence if the evidence is obviously inadmissible on all possible grounds. United States v. Verges, No. 1:13cr222 (JCC), 2014 U.S. Dist. LEXIS 17969, at *6-7 (E.D. Va. Feb. 12, 2014). "This principle applies because a court is almost always better situated during the actual trial to assess the value and utility of evidence." Id. at *7 (internal quotation marks and citation omitted). Furthermore, motions in limine seeking the exclusion of broad categories of evidence are generally disfavored. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).

Under the Federal Rules of Evidence, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than

4

it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. If evidence does not pass this standard, it is inadmissible. Fed. R. Evid. 402. Even if evidence is relevant, however, it may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Evidence is unfairly prejudicial "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." United States v. Hassan, 742 F.3d 104, 132 (4th Cir. 2014) (quoting United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008)).

### III. Analysis

#### A. Admissibility of Evidence of Victims' Ages

Defendant argues that evidence of the victims' ages is irrelevant because the age of the victims is not an element of the crimes with which she is charged.[1] Defendant is concerned that evidence of the victims' ages will inflame the jury. The Government

---

[1] Though Defendant is facing other charges, the parties' arguments focus on the charges for mail and wire fraud. To prove mail or wire fraud the Government must show (1) Defendant devised or intended to devise a scheme or artifice to defraud, (2) Defendant used mail or wire communications in furtherance of the scheme, (3) materiality of the falsehood, and (4) Defendant had specific intent to defraud. See 18 U.S.C. § 1341; 18 U.S.C. § 1342; Neder v. United States, 527 U.S. 1, 25 (1999)(holding that materiality of falsehood is an element of mail and wire fraud); United States v. Delfino, 510 F.3d 468, 471 (4th Cir. 2007) (describing elements of mail fraud); United States v. Mason, 41 F. App'x 612, 617 (4th Cir. 2002) (describing the elements of wire fraud); United States v. Copple, 24 F.3d 535, 544 (3d Cir. 1994).

5

argues that age is relevant to the fraud scheme which allegedly targeted retirees and unsophisticated investors.

While Defendant is correct that age is not an element of the crimes with which she is charged, something does not have to be an element to be relevant evidence. See Copple, 24 F.3d at 544-45 (permitting evidence of actual loss even though it was not an element of mail fraud because it was probative of specific intent). This Court previously addressed admissibility of evidence about victims' vulnerabilities, including age, in the March 22nd hearing on Bank's first motion in limine. The Court ruled that evidence concerning a victim's vulnerability in general is admissible to some extent to show intent to defraud and materiality of fraudulent statements. Further, this Court held that the probative value, of evidence showing that the defendant's advertising scheme targeted a demographic of vulnerable, unsophisticated investors, was not substantially outweighed by the risk of unfair prejudice.

The age of victims was a part of this Court's ruling on victim vulnerability, and the same considerations apply here. As with vulnerability generally, age is intertwined with the manner of the conduct of the fraud. Age is a part of the Government's theory of the case about how the scheme targeted unsophisticated investors, specifically those of retirement age. Additionally, the Court commented that it would be impossible to prevent the jury from naturally inferring from the victim's own testimony that they were

6

vulnerable, even if the Court were to rule that the Government was not permitted to highlight vulnerability. The same is true for age—the jury would be able to see the age of victims on the stand and determine that they are at or near typical retirement age.

Consistent with its ruling on evidence of victim vulnerability on March 22, 2018, the Court finds that evidence of the victims' ages (1) has probative value to show specific intent to defraud, (2) is material, and (3) has probative value that is not outweighed by substantial prejudice. However, as previously ruled, the Court will be attentive to any specific attempts by the Government to emphasize victims' vulnerabilities such that it risks unfair prejudice to the Defendant. Therefore, the Court **DENIES** Defendant's motion in limine to exclude evidence of victims' ages.

### B. Admissibility of Evidence of Victims' Financial Circumstances

Defendant moves next to exclude evidence of the victims' financial circumstances. Mot. in Limine, ECF No. 93. She asserts such evidence is irrelevant and highly prejudicial. The Government argues that evidence of financial circumstances is intrinsic to the scheme and related to previous arguments on the source of the funds being retirement funds.

Financial circumstances can encompass various types of evidence. The arguments in this case highlight the source of the

money invested by the alleged victims, and how financially vulnerable the alleged victims were when they invested their money.

**1. Source of Funds**

During the March 22nd hearing, the Government argued that the source of the money lost was relevant to materiality and intent to defraud. Further, the Government argued the source of the funds is so intrinsic to the alleged fraud scheme that it is highly relevant and should not be excluded.

The Government's argument for materiality of falsehood claims the evidence of the source of the funds is relevant because people are more likely to be careful about spending money they have saved for retirement and would not have invested had defendants been truthful about how they were managing the funds. Something is material when "knowledge would affect decision-making." *Material*, Black's Law Dictionary (7th ed. 1999). A material representation in a fraud case is "a representation that . . . actually causes an event to occur." *Material Representation*, Black's Law Dictionary (7th ed. 1999). In other words, it is a representation that reasonably caused victims to part with their money. Kevin F. O'Malley et al., Federal Jury Practice and Instructions: Criminal § 47:03 (6th ed. 2009). If the source of the money is funds necessary for retirement years, and people are particularly careful when parting with such funds, arguably, the misrepresentations must be more convincing than they would need to

be to get someone to invest ordinary excess funds. This is because the misrepresentations would have to overcome natural inhibitions to spending money that one has saved to live on in the future. Spending excess money may not require the same falsehoods because people are generally more willing to take risks with such money. For example, the Government argues that, if the alleged victims had known defendants would take sixty percent off the top of their investment, the alleged victims would not have invested, but someone who is willing to take a higher risk with his or her excess money might conceivably be willing to invest even if sixty percent is taken off the top. If the alleged false statements made by defendants can reach a level that would placate someone's natural inhibitions about investing retirement savings, then the statements are clearly material because knowledge of the false representations would affect their decisions about whether to invest retirement savings necessary for retirement years. In other words, if the source is retirement funds, people are less likely to invest without hearing the fraudulent representations required to overcome natural inhibitions about parting with funds meant to sustain people for the rest of their lives after they stop working.

In opposition to the Government's argument, Defendant argues that the source of the funds is irrelevant because it is not necessary to prove the elements of a fraud scheme. Further, Defendant claims that the evidence of retirements funds only serves

9

to evoke the sympathies of the jury because jurors would be sensitive to people losing such important savings and might be excited to irrational behavior.

During the March 22nd hearing, the Court questioned the Government's materiality argument as it related to evidence of loss of retirement funds and ruled that the probative value of evidence of loss, for the purposes of proving materiality, is substantially outweighed by the risk of unfair prejudice and therefore is not admissible. Evidence of loss has negligible relative probative value for materiality because witness testimony of oral communications and introduction of any written communications can establish the materiality of any misrepresentations. Stated differently, it is not necessary to say victims lost <u>retirement</u> funds rather than funds from some other source to show that the lies and omissions caused them to part with their money. While the source of funds may have some probative value to show why the false statements were effective in making people invest, the risk of prejudice substantially outweighs the probative value because there is other evidence to support materiality of the falsehoods. Therefore, the probative value is substantially outweighed by the danger of eliciting an emotional response from the jury upon hearing about the loss of retirement funds sustained by victims of the fraudulent scheme. See S.E.C. v. <u>Goldstone</u>, No. CIV 12-0257 JB/GBW, 2016 U.S. Dist. LEXIS 96776,

at *56-57 (D.N.M. June 21, 2016) (holding that evidence of actual loss had little relative probative value as compared to witness testimony pertaining to materiality, and, therefore, the danger of an emotional response by the jury to the amount of money lost from the victims' retirement savings outweighed the minimal relative probative value). Therefore, proof of financial circumstances just to show the loss involved retirement funds is not admissible <u>for materiality purposes</u>.

However, at the March 22nd hearing, this Court noted that the source of funds is inextricably intertwined with the fraud scheme. The Government's theory of the case is that the defendants were targeting a specific demographic of investors. The admissibility of the source of the funds affects the Government's ability to present its theory of the case and is probative of the intent to defraud.

The Government argues that the evidence of the source of funds is integral to testimony by the alleged victims about their interactions with the Defendant and her co-conspirators and is, therefore, essential evidence to explain to the jury how the defendants conducted the fraud scheme because it explains how the victims had money to invest. Part of the facts the Government intends to introduce is evidence of how the alleged victims were convinced to move funds from legitimate 401K and IRA accounts with legitimate brokers to self-directed accounts at trust companies as

directed by defendants. These facts are necessary, the Government argues, to adequately explain how the fraud scheme operated so that it makes sense to a jury.

Additionally, the Government argues evidence of the source of the funds is relevant to intent because defendants knew the alleged victims were investing retirement funds. Such knowledge is probative of defendants' intent to target a specific demographic of investors at or near typical retirement age through advertising and social security seminars. The source of the funds shows that certain demographics were impacted by the scheme. If certain demographics were impacted, then it is more likely that certain demographics were targeted. If certain demographics were targeted for their financial circumstances, then it is more likely the defendants had a specific intent to defraud because they wanted clients that had money to invest and would fall for the fraud scheme. Therefore, the Government argues, the source of the funds is relevant to the intent to defraud.

On the other hand, Defendant argues that evidence of the source of the funds is not probative of any element of the offense because the marketing reached multiple demographics. Defendant argues this makes the Government's argument less compelling.

During the March 22nd hearing on the admissibility of the source of the funds the Court stated that "the way things are pitched to that demographic bears on the intent of the defendant

12

in particular in light of the various risks involved with the investment and people's insecurities or securities." Hr'g Tr. at 97, ECF No. 103. By the same reasoning, if the funds come from retirement savings, that is probative of the argument that Defendant and her co-conspirators targeted the demographic of retirees. The way it was pitched to retirees is probative of intent because it shows the intent to reach a financially vulnerable population. Thus, the Court finds, as it did on March 22nd, that evidence of the source of funds is probative of intent to defraud.

Although the evidence is probative of intent, the Court must weigh the probative value against the risk of unfair prejudice. As explained above when discussing materiality, there is some risk of prejudice in evoking sympathy for victims who lost their retirement funds, but the risk does not substantially outweigh the probative value for proving intent because it is integral to the Government's theory of the case and there are no adequate alternative means of proof. Additionally, evidence of the source of funds is intrinsic to the alleged fraud scheme as the scheme cannot be fully explained to the jury without evidence about the source of the funds. Moreover, while evidence that Defendant and her co-conspirators also targeted non-retirees may make the Government's argument less compelling, that is not enough to exclude evidence of the source of funds at this time, and Defendant is free to mitigate prejudice

by presenting evidence demonstrating that the advertising was also directed at non-retirees. As previously noted, the Government should not unduly dwell on the source of funds or emphasize how victims may have "lost [their] entire retirement savings." Hr'g Tr. at 98, ECF No. 103. The Court will be sensitive to attempts to emphasize this, but because the source of the funds (retirement savings) was intertwined with the alleged fraud scheme, the Court finds, consistent with its ruling on March 22nd, that evidence of the source of funds is admissible for purposes of showing Defendant's intent to defraud.

### 2. Financial Vulnerability

Financial circumstances are relevant to vulnerability as well in that they indicate the wealth and relative sophistication of the investors. The Court previously ruled that victim vulnerability was intrinsic to the scheme because the Government's theory of the case is that the defendants' advertisements targeted unsophisticated investors and people at or near retirement age. Evidence of victim financial circumstances is relevant background information to explain how the scheme occurred and why the victims were targeted. See United States v. Seko, No. 1:15cr301 (JCC), 2016 U.S. Dist. LEXIS 176777, at *7 (E.D. Va. Dec. 20, 2016).

As evidence of vulnerability, financial circumstances meet the standard of Rule 401 because they are probative of the Defendant's specific intent to defraud. Financial circumstances

are relevant to show how Defendant and her co-conspirators targeted people with financial vulnerabilities, which is probative to their intent to defraud the alleged victims. The fact that victims were financially vulnerable or unsophisticated shows that they were more easily victimized by a fraud scheme. If they were more easily victimized, then they were more easily targeted. If they were more easily targeted, then it is more likely that defendants intended to defraud them as part of a scheme targeting vulnerable investors. Though there is a risk that the jury's emotions will be inflamed by sympathies felt for poor or unsophisticated victims, as previously ruled, the vulnerability of the victims is so intrinsic to the scheme that the probative value is not substantially outweighed by the risk of unfair prejudice under Rule 403.

So long as financial circumstances are used to show the source of funds and vulnerability of the victims, the Court holds that the evidence is probative of specific intent to defraud and that the probative value is not substantially outweighed by unfair prejudice. Therefore, the motion in limine to exclude evidence of victims' financial circumstances is **DENIED**. However, as previously ruled, the Court will be attentive to the Government's attempts to unnecessarily use financial circumstances to influence juror's emotions.

## C. Admissibility of Evidence of Whether the Invested Funds Exhausted All of the Victims' Resources

Defendant also moves to exclude evidence indicating whether the invested funds exhausted all the victims' resources. Mot. in Limine, ECF No. 93. Exhaustion of resources implicates considerations of actual and circumstantial losses suffered by the victims. The Court previously ruled on evidence of loss in the March 22nd hearing.

### 1. Actual Loss

Proof of actual loss is not an element of mail or wire fraud. See Delfino, 510 F.3d at 471 (4th Cir. 2007); Mason, 41 F. App'x at 617 (4th Cir. 2002). This, however, does not mean that evidence of actual loss is irrelevant. Numerous courts have held that evidence of loss is relevant to a defendant's specific intent to defraud. United States v. Noel, 502 F. App'x 284, 287 (4th Cir. 2012); United States v. Zehrbach, 98 F. App'x 211, 218 (4th Cir. 2004) ("In a mail fraud prosecution, evidence that the victims suffered losses and the defendant refused to make good those losses is relevant to show the defendant's specific intent to defraud."); Copple, 24 F.3d at 545 ("Proving specific intent in mail fraud cases is difficult, and, as a result, a liberal policy has developed to allow the government to introduce evidence that even peripherally bears on the question of intent."). Therefore, evidence of actual loss that the Government seeks to introduce

satisfies the relevance test of Rule 401, as the evidence pertains to fraudulent intent.

The evidence of actual loss also survives the exclusion standard of Rule 403. Though there is some danger that evidence of the amount of money lost may evoke sympathy from the jury, such evidence may be necessary to prove intent to defraud. Additionally, the Court notes that evidence of actual loss has been permitted by the Fourth Circuit to prove intent in fraud cases. See, e.g., Noel, 502 F. App'x at 287; Zehrbach, 98 F. App'x at 218.

Therefore, given the significant probative value of the evidence of actual loss as to intent, the danger of unfair prejudice is insufficient to require exclusion by Rule 403 analysis. However, if the Defendant desires, she may move to have the Court issue a cautionary instruction that the jury "not . . . be swayed by sympathy or pity." See, e.g., Noel, 502 F. App'x at 288.

### 2. Collateral Loss

Unlike actual loss, evidence of collateral financial and emotional harms sustained by the victims should be excluded. Other courts have repeatedly held that evidence of collateral loss sustained by victims of fraud should be excluded at trial as unfairly prejudicial. See, e.g., Copple, 24 F.3d at 545-46; Seko, 2016 U.S. Dist. LEXIS 176777, at *4-7. But see Noel, 502 F. App'x at 287-88 (holding that admitting collateral harm evidence was a

harmless error in part because a cautionary instruction was provided to "not . . . be swayed by sympathy or pity"); United States v. Cloud, 680 F.3d 396, 402 (4th Cir. 2012) (holding that evidence of actual and collateral loss was admissible because the defendant argued that the victims were the fraudulent parties). Although actual loss is probative of intent, evidence of collateral loss has no relative probative value when evidence of actual losses is presented. Therefore, evidence at trial of collateral emotional and personal hardships endured by the victims would only serve to elicit additional sympathy for those victims and risk unfairly prejudicing the Defendant.

### 3. Exhaustion of Resources as Evidence of Loss

Though exhaustion of resources may be related to how much victims actually lost, the Court does not see how evidence about the complete depletion of resources is necessary to explain victims' actual loss. Exhaustion of resources is a collateral consequence to actual loss because it emphasizes the amount the victims lost relative to what resources they had before. As noted in the March 22nd hearing, evidence should not spill over into victims talking about how they lost their entire retirement savings. This impact on resources is a type of collateral consequence because it shows the broader impact of the fraud on the victims' lives, rather than just the actual loss suffered.

As noted in the March 22nd hearing, the Government has represented that it does not intend to offer evidence of personal hardship or collateral consequences. Even though the Government argues it will not present evidence of collateral loss at trial, the Court will still rule on Defendant's current motion. The Court finds, as it did on March 22nd, that evidence of collateral consequences, and emotional or personal hardships related to victims' actual losses, must be excluded under Federal Rule of Evidence 403. Because exhaustion of resources is more of a collateral loss than an actual loss, the Court **GRANTS** Defendant's motion in limine to exclude evidence of exhaustion of resources.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion in limine to exclude evidence of the victims' ages and financial circumstances is **DENIED**, and Plaintiff's motion in limine to exclude evidence of exhaustion of resources is **GRANTED**.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to all counsel of record.

/s/ Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 9, 2018